(No. 48944.—
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. NORVEL HOLMES, Appellant.

*Opinion filed January 20, 1978.*

James J. Doherty, Public Defender, of Chicago (Lance R. Miner and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Doald B. Mackay, Assistant Attorney General, Lee T. Hettinger and Michael E. Shabat, Assistant State's Attorneys, of Chicago, of counsel), for the People.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

In a jury trial in the circuit court of Cook County, defendant, Norvel Holmes, was convicted of the offense of attempted armed robbery and sentenced to the penitentiary for not less than three nor more than nine years. The appellate court affirmed (41 Ill. App. 3d 956), and we allowed defendant's petition for leave to appeal. The facts are adequately stated in the appellate court opinion and will be repeated here only to the extent necessary to discuss the issues.

Defendant contends first that the circuit court erred in refusing to consider defendant's allegation in his motion for a new trial that members of the jury had improperly conducted their own investigation concerning certain evidence. The testimony showed that at the time of the attempted robbery the ground was snow covered and that the complainant had pointed out to the police shoe prints which her assailant had left in the snow. One of the arresting officers, who had caused defendant to make shoe

prints in the snow for comparison, testified that the prints left by the heel of the defendant's left shoe matched the print left by the assailant, that a crack extended from the brand name "logo" toward the corner of the heel, and that in the heel of each shoe print was the insignia "Florsheim." The motion for new trial was supported by the affidavit of one of defendant's attorneys, who stated that, in a conversation "with the members of the jury" in which an assistant State's Attorney had participated, a named juror told them that during the trial "we [apparently several members of the jury] went to a Florsheim shoe store and inspected various heels of shoes for the purpose of ascertaining the trade design thereon." The juror stated "that two kinds of designs were observed, one containing a crack or line, and that the results of this investigation were discussed during deliberations."

Colloquy between court and counsel during argument of the motion for new trial shows that counsel were in agreement that the jurors stated that several of them went to the Florsheim store, picked up some of the shoes, and looked at the heels. There appears to be some difference of opinion as to precisely what was said concerning the kinds of designs observed or the presence of a crack or line.

It is defendant's position that the circuit and appellate courts misconstrued the rule that the verdict may not be impeached by the testimony or affidavit of a juror. He argues that although inquiry may not be made into the motives or methods for the jury's verdict, inquiry into jury misconduct is not precluded. It is the People's contention that the circuit and appellate courts correctly held that a jury cannot impeach its own verdict and that in any event defendant has made no showing of prejudice as the result of the jury's alleged misconduct.

Although not articulated in precisely that manner, it appears that the circuit court concluded that under the decisions of this court it was precluded from considering

the allegations contained in the motion for new trial and supporting affidavit on the ground that to do so would permit defendant to improperly attempt to impeach the jury's verdict. The appellate court, relying on *People v. Stacey,* 25 Ill. 2d 258, said, "Without the affidavit or testimony of the jury, the alleged misconduct could not be established as having any prejudicial effect upon the verdict. In Illinois it has long been the rule that a jury cannot impeach its verdict by either affidavit or testimony." 41 Ill. App. 3d 956, 969.

Professor Wigmore traces the origin of the rule that the verdict of a jury may not be impeached by the testimony of the jurors to the decision of Lord Mansfield in *Vaise v. Delaval* (K.B. 1785), 1 Term R. 11, 99 Eng. Rep. 944 (8 Wigmore, Evidence 696 (McNaughton rev. ed. 1961)). Although the rule appears to have been generally followed in this country, it has now, in most jurisdictions, been substantially modified. An examination of the authorities shows that the situations in which the testimony or affidavit of a juror is offered in an attempt to impeach a jury verdict fall into two broad categories. In the first category are those instances in which it is attempted to prove by a juror's testimony or affidavit the motive, method or process by which the jury reached its verdict. These, almost without exception, have been held inadmissible. (See, *e.g., People v. Tobe,* 49 Ill. 2d 538, involving an attempt to show that "One juror said that because she had been told the jury had to reach a verdict she signed a verdict in which she didn't believe"; another juror stated that although the statement involved "didn't affect his decision" the affiant said "he knew it influenced others to reach the verdict" (49 Ill. 2d 538, 542); *People v. Pulaski,* 15 Ill. 2d 291, involving an attempt to interrogate jurors "as to whether they knew of the court's decision in regard to Vassallo," a co-defendant who had waived jury trial and been tried by the court (15 Ill. 2d 291, 300).)

The second category involves those situations in which the testimony or affidavit of a juror is offered as proof of conditions or events brought to the attention of the jury without any attempt to show its effect on the jurors' deliberations or mental processes. In most jurisdictions such proof is admissible. (See Annot., 32 A.L.R.3d 1356 (1970).) The distinction and the rationale for the exclusion of jurors' affidavits and testimony in the first instance and their admission in the second was well stated by Mr. Justice Brennan, then serving on the Supreme Court of New Jersey, who in *State v. Kociolek* (1955), 20 N.J. 92, 99-100, 118 A.2d 812, 816, 58 A.L.R.2d 545, 552, said:

> "The better reasoned decisions support the exclusion of jurors' testimony as to their mental processes, not upon the discredited basis of the policies against self-stultification and avoidance of jury tampering, perjury or other fraudulent practices, but upon the sounder ground that, being personal to each juror, the working of the mind of any of them cannot be subjected to the test of other testimony, and therefore that such testimony should not be received to overthrow the verdict to which all assented. \*\*\*
>
> Where, however, jurors' testimony goes, not to the motives or methods or processes by which they reached the verdict, but merely to the existence of conditions or the occurrence of events bearing on the verdict, that basis of policy does not exist, and this whether the condition happens or the event occurs in or outside of the jury room. Evidence of the actual effect of the extraneous matter upon jurors' minds can and should be excluded, as such evidence implicates their mental processes, but receiving their evidence as to the existence of the condition or the happening of the event, particularly when the

consequences are governed according to whether capacity for adverse prejudice inheres in the condition or event itself supplies evidence which can be put to the test of other testimony (and thus sound policy is satisfied) and at the same time the evidence can serve to avert, as here, a grave miscarriage of justice, which it is certainly the first duty of a court of conscience to prevent if at all possible. As stated by Justice Brewer in *Perry v. Bailey,* 12 Kan. 539, 544 (Sup. Ct. 1874):

'As to all those matters lying outside the personal consciousness of the individual juror, those things which are matters of sight and hearing, and therefore accessible to the testimony of others, and subject to contradiction—"overt acts," as the Massachusetts court expresses it,—it seems to us that the interests of justice will be promoted, and no sound public policy disturbed, if the secret of the jury-box is not permitted to be the safe cover for the perpetration of wrongs upon parties litigant. \*\*\* as to overt acts, they are accessible to the knowledge of all the jurors. If one affirms misconduct, the remaining eleven can deny.' "

Although both this court and the appellate court have applied the rule as did the appellate court here, an examination of our earlier cases casts doubt on the correctness of so construing the rule. When first confronted with the question in the case of *Sawyer v. Stephenson,* 1 Ill. (1 Breese) 24, the court held that the affidavit of a juror may be received to prove improper conduct on the part of the jury. In the later cases which hold to the contrary (see *Martin v. Ehrenfels,* 24 Ill. 187, 189, and *Reins v. People,* 30 Ill. 256, 274) no mention is made of *Sawyer,* and the statements that the affidavits of

the jurors may not be used to impeach the conduct of the jury are supported by neither reasoning nor authority. The rule of *Martin* and *Reins* appears to have been followed through *Wyckoff v. Chicago City Ry. Co.,* 234 Ill. 613, in which the question was considered by this court. (See, *e.g., Sanitary District v. Cullerton,* 147 Ill. 385; *Heldmaier v. Rehor,* 188 Ill. 458.) We note that in *United States ex rel. Tobe v. Bensinger* (7th Cir. 1974), 492 F.2d 232, 237, the Court of Appeals for the Seventh Circuit perceived the rule to be that "In Illinois, a jury verdict will not be set aside upon the occurrence of a communication between the jury and the court or some third person outside the presence of the defendant where it is apparent that no prejudice has resulted. People v. Mills, 40 Ill. 2d 4, 14-15, 237 N.E.2d 697, 702-703 (1968); People v. Tilley, 411 Ill. 473, 477-478, 104 N.E.2d 499, 501-502 (1952); People v. Brothers, 347 Ill. 530, 548, 180 N.E. 442, 447-448 (1932). In an attempt to make a showing of prejudice based on the affidavits of jury members, actual evidence of the nature of outside influences exerted on the jury during deliberations will be considered, but evidence relating to the effect of such influences on the mental processes of jury members is inadmissible. People v. Pulaski, 15 Ill. 2d 291, 300, 155 N.E.2d 29, 34 (1958). Because the actual effect of the conduct on the minds of the jury cannot be proved, the Illinois Supreme Court has held that the standard to be applied is whether the 'conduct involved "such a probability that prejudice will result that it is [to be] deemed inherently lacking in due process." Estes v. State of Texas, 381 U.S. 532, 542-543, 85 S. Ct. 1628, 1633, 14 L. Ed. 2d 543.' People v. Tobe, 49 Ill. 2d at 544, 276 N.E.2d at 298."

Rule 606(b) of the Federal Rules of Evidence provides:

"(b) *Inquiry into validity of verdict or indictment.*— Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or

statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about what he would be precluded from testifying be received for these purposes."

Contained in the notes of the Committee on the Judiciary, House Report No. 93–650, is the comment of the Advisory Committee that "The trend has been to draw the dividing line between testimony as to mental processes, on the one hand, and as to the existence of conditions or occurrences of events calculated improperly to influence the verdict, on the other hand, without regard to whether the happening is within or without the jury room. \*\*\* The jurors are the persons who know what really happened. Allowing them to testify as to matters other than their own reactions involves no particular hazard to the values sought to be protected. The rule is based upon this conclusion. It makes no attempt to specify the substantive grounds for setting aside verdicts for irregularity." (28 U.S.C. app. Fed. R. Evid. 606(b) (Supp. V 1975).) The notes of the Advisory Committee to Rule 606(b), after observing approvingly that "The authorities are in virtually complete accord in excluding" evidence of the mental operations and emotional reactions of jurors, states that there appears to be "substantial authority" which, while allowing the testimony of a juror as to irregularities occurring outside the jury room, refuses to allow a juror to disclose irregularities which occur in the jury room, but permits outsiders to testify as to occurrences both inside and out. It notes further the absence of a rationale to support foreclosure of testimony by jurors "as to prejudi-

cial extraneous information or influences injected into or brought to bear upon the deliberative process." (28 U.S.C. app. Fed. R. Evid. 606(b) (Supp. V 1975).

We are persuaded that, as provided in Rule 606(b) of the Federal Rules of Evidence, a juror should be permitted to testify "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." We hold, therefore, that the circuit court erred in holding that it could not consider the allegations made in defendant's motion for new trial and the affidavit filed in support thereof.

We consider next the question whether the cause should be remanded for a hearing on the matters alleged in the motion for new trial. An examination of the colloquy between court and counsel leaves no question that the statements attributed to the jurors were made in the presence of one defense attorney and an assistant State's Attorney and that several members of the jury had gone to a store and examined the heels of some of the shoes there. We question that much more proof than is already contained in the record could be adduced concerning an occurrence of four years ago and under these circumstances do not remand for a hearing on the motion for new trial.

We turn now to the question whether under the circumstances shown the judgment must be reversed and the cause remanded. Presumably there are many types of "extraneous prejudicial information" or "outside influence[s]," and we need not and do not discuss whether and in what types of situations a defendant might be required to show "such a probability that prejudice will result that it is [to be] deemed inherently lacking in due process." (See *United States ex rel. Tobe v. Bensinger,* 492 F.2d 232, 237.) Here, the "extraneous information" improperly brought to this jury's attention was in the nature of

evidence with which the defendant had not been confronted at trial and which he had no opportunity to refute. Although no prior decision of this court has involved an attack, on similar grounds, on a jury verdict in a criminal case, the opinion in *People v. Rivers,* 410 Ill. 410, presents a situation which we find analogous. In *Rivers,* four teenage girls were charged with murder. The defendants waived trial by jury, and at the conclusion of the testimony the People offered in evidence the statements made by the defendants to an assistant State's Attorney. The circuit court admitted the statements of three of the defendants and reserved its ruling as to the statement of the fourth. The statements were not read into evidence at that time, and in colloquy the court indicated that unless there was something in the statements which incriminated the defendants they would be discharged. The court was then adjourned until the following day. The trial was continued on two occasions and when resumed the court found all four defendants guilty of murder and sentenced them. In reversing the judgment and remanding the cause for a new trial, this court held that although nothing in the record indicated the scope and extent of its inquiry, it was apparent from the record that the circuit court had engaged in a private investigation of the case. The court said: "When a defendant in a criminal case waives trial by jury and submits his rights and liberty to a judge, that judge is in the identical position of the jury and all the recognized rules for the protection of the defendant's rights apply with equal force. (*People v. Hoffman,* 379 Ill. 318.) It is axiomatic that any unauthorized information reaching the jury is prejudicial error." (410 Ill. 410, 419.) The court also said:

> "The law is well settled that, exclusive of certain matters of which the court may take judicial notice, the deliberations of the trial judge are limited to the exhibits offered and admitted

in evidence and the record made before him in open court. Any private investigation by the court, either during the trial of the cause or while the motion for new trial is pending, constitutes a denial to the defendant of the constitutional guarantee of due process of law. (*People v. Cooper,* 398 Ill. 468.) The defendant in any criminal proceeding has an inherent and constitutional right that all proceedings against him shall be open and notorious, and in his presence, and any inquiry or any acquisition of information or evidence outside of open court and outside of the presence of the defendant is prejudicial error. The defendant cannot be expected to know the scope and extent of any private inquiry made by the court outside of open court and he is not required to inquire into such matters and to resort to extraneous proof to show that he has been prejudiced. He has a right to rely upon his constitutional guarantee that nothing shall be considered against him except the competent evidence introduced in open court, in his presence, by the witnesses who confront him.

An extended discussion of these principles or the citation of the numerous and uniform authorities is deemed unnecessary. As we said in *People v. Cooper,* 398 Ill. 468, at page 472, 'In short, any private investigation by a court \*\*\* constitutes a denial to the defendant of the constitutional guarantee of due process of law.' The courts of this State have rigidly adhered to that rule. Defendant in error, in its brief and argument, has not cited a single case where this rule has ever been relaxed, and we have been unable to find any such case in this State.

The question here is simply, does this record

show any private investigation whatosever by the court outside the presence of the defendants. If it does, we must find prejudicial error, or we will throw open the door to such private investigations and throw the burden on defendant to show actual prejudice." (410 Ill. 410, 416-17.)

We do not interpret *Rivers* to mean, nor do we now hold, that every instance in which extraneous or unauthorized information reaches the jury results in error so prejudicial as to require reversal. Here the extraneous information improperly brought to the jury's attention was in the nature of evidence crucial to the question of defendant's identification with which he had neither been confronted at trial nor had the opportunity to refute. Under these circumstances we hold that the investigation by the members of the jury resulted in error so prejudicial that the judgment must be reversed and the cause remanded. In view of that conclusion we do not consider defendant's contention that inflammatory and prejudicial argument on the part of the assistant State's Attorney deprived him of a fair trial. Although comments were made in the argument of which we do not approve, we consider it unlikely that the same errors will recur on retrial.

For the reasons stated the judgments of the appellate and circuit courts are reversed and the cause is remanded to the circuit court of Cook County for further proceedings.

*Reversed and remanded.*