(No. 50894.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. HENRY CLAY PRESTON, Appellant.

*Opinion filed June 8, 1979.*

Peter J. Schmiedel, of Haas, Schmiedel & Taylor, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Lee T. Hettinger and Carol A. Kearney, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE WARD delivered the opinion of the court:

The defendant, Henry Clay Preston, was indicted in the circuit court of Cook County for the murder, robbery and armed robbery of George Pope. A jury returned verdicts of guilty of murder and robbery and not guilty of armed robbery, and judgments were entered on the verdicts. The defendant received concurrent sentences of from 75 to 100 years on the murder conviction and from 6 to 8 years on the robbery conviction. The appellate court affirmed the convictions (60 Ill. App. 3d 162), and we allowed the defendant's petition for leave to appeal.

The defendant was charged with having shot and killed Pope in the course of a robbery in a Chicago Housing Authority building in Chicago, where Pope was employed as a uniformed security guard. There were no eyewitnesses, and the defendant's conviction rested on the testimony of James Fleming, a friend of the defendant, concerning events taking place shortly following the crime. Fleming testified that the defendant visited him on the evening of April 8, 1974, and told Fleming that earlier that evening, after encountering Pope in an elevator, he had taken the latter's pistol from its holster, announced a holdup, and then shot him with the pistol. The defendant told Fleming that he then removed a wallet and some currency from the person of the victim, and he showed Fleming the pistol and wallet. The pistol was sold to another person. It was later recovered, and was identified as having belonged to the victim. The wallet and the

currency were not found. The count charging robbery alleged the taking of the pistol, while the charge of armed robbery alleged the taking of the wallet and the currency.

In addition to this direct appeal, the defendant filed a petition under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1977, ch. 38, par. 122—1 *et seq.*) in which he alleged, *inter alia*, that Fleming's testimony was perjured. The petition was dismissed without a hearing, and the defendant appealed. The post-conviction appeal was consolidated with the direct appeal, and in the former the appellate court reversed the judgment of dismissal and remanded the cause with directions to hold an evidentiary hearing on the claim of perjury. Neither side has sought review here of the appellate court's judgment in the post-conviction appeal, and that proceeding is accordingly not before us.

Three issues are raised on the direct appeal. One is the propriety of a supplemental instruction given to the jury. The second is the alleged failure of the trial court to explore fully a response made by a juror during the polling of the jury, a response which assertedly indicated dissent from the verdict of guilty on the murder charge. The third is the refusal to admit a post-trial deposition of the juror concerning the deliberations of the jury. No claim is made that the evidence failed to establish the defendant's guilt beyond a reasonable doubt.

The taking of testimony at the trial took slightly less than two days. Fleming and six other witnesses were called by the State; the defendant did not testify and called no witnesses. The jury began its deliberations at about 4:25 p.m. on the second day. At 11 p.m. the judge called counsel to his chambers, and read them a supplemental instruction he intended to give the jury regarding dead-locks. No instruction on that subject had been given the jury before it retired, and no request for a supplemental instruction was made by either party. The defendant objected to the giving of the instruction as premature, and

also objected to certain portions of it. The jury was then called in and the following took place:

"THE COURT: *** Ladies and gentlemen, have you been able to reach a verdict? ***

THE FOREMAN: Not completely, your Honor.

THE COURT: *** Do you think you can arrive at a verdict?

THE FOREMAN: I couldn't tell you at the moment, sir.

THE COURT: Okay. I am going to send you back. I just want to let you know that in a large proportion of the cases absolute certainty cannot be expected. Although the verdict must be the verdict of each individual juror and not a mere acquiescence of the conclusion of others, yet you should examine the questions submitted with proper regard and deference to the opinions of each other and you should listen to each other's opinions with a disposition to be convinced. It is your duty to decide the case if you can conscientiously do so. If you fail to agree on a verdict, the case must be retried and a future jury must be selected in the same manner and from the same source as you have been chosen and there is no reason to believe that the case would ever be submitted to twelve men and women more competent to decide, nor can a case be tried any better or more exhaustively than it has been here, or that any more clear evidence could be produced on behalf of either side. Now you can retire and reconsider the verdicts in this case."

The jury retired, and there followed a colloquy with counsel in which the judge stated that he did not intend to lock the jury up for the night unless some reason appeared to do so, but that on the motion of either side the jury would be called every hour and asked if it could reach a decision. At this point the defendant moved for a mistrial.

At 12:50 a.m. the defendant moved for a directed verdict on the ground that the length of time that the jury had been out showed the existence of a reasonable doubt as to guilt. The defendant also made another motion for a mistrial. The court denied these motions and summoned the jury. The foreman stated that the jury had reached a

verdict, but the court, having looked at the verdict forms, disclosed, out of the hearing of the jury, that a finding had been reached on only one of the charges. The court did not specify which charge this was. The jury was given no further instruction at this juncture, and was sent back for additional deliberations.

At 1:50 a.m. the jury returned verdicts on all three charges—guilty of robbery, guilty of murder, and not guilty of armed robbery. Before entering judgment, the court, at the defendant's request, directed that the jury be polled with respect to the guilty verdicts, and during the poll the following colloquy took place:

> "CLERK: Vera Goss, as to the verdict of guilty of murder, was this and is this now your verdict?
> JUROR GOSS: (unintelligible)
> CLERK: As to the verdict of guilty of robbery, was this and is this now your verdict?
> MR. KALNINS [counsel for the defendant]: We would ask for a side bar.
> COURT: Poll the jury.
> CLERK: Vera Goss, as to the verdict of guilty of murder, was this and is this now your verdict?
> JUROR GOSS: Compromise.
> MR. KALNINS: We would ask to be heard.
> MR. OBERTS [counsel for the People]: We would request the rest of the jury to continue to be polled.
> THE COURT: Continue the poll."

After the remaining jurors were polled, the court questioned Mrs. Goss further. Although the colloquy is set forth only in condensed form in the defendant's brief and abstract and in the opinion of the appellate court, it is shown as follows in the report of proceedings:

> "THE COURT: Juror Goss, you were asked by the Clerk if the verdict when you signed this was your verdict, and is it still your verdict. What is your answer to that?
> JUROR GOSS: It is my verdict.
> MR. MIKULA [counsel for the defendant]: Judge
>
> ———
>
> COURT: Wait a minute. Is it still your verdict?

JUROR GOSS: Yes.

COURT: Is it still your verdict as of right now?

JUROR GOSS: Yes."

As an exhibit to his post-trial motion the defendant offered what he styled a discovery deposition of Mrs. Goss taken after the conclusion of the trial. Concerning the deliberations of the jury she stated that a difference of opinion existed between her and the other jurors on the murder and armed robbery charges. The other jurors believed that the defendant should be found guilty on each charge, while she did not believe him guilty of either. She stated that she finally agreed to sign a verdict of guilty of murder upon the agreement of the other jurors to return a verdict of not guilty of armed robbery. The court refused to admit the deposition.

We consider first the supplemental charge given the jury. This was virtually identical to the one given in *People v. Prim* (1972), 53 Ill. 2d 62, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731. In *Prim* the jury had been deliberating for over four hours when it was called in by the judge. When the foreman was asked whether it could reach a verdict, he said, "I think there is a chance." So far as the opinion discloses, no request for a supplemental instruction had been made by either party. The jury returned its verdict 15 minutes after receiving the instruction.

The court noted that the charge was based on one approved by the United States Supreme Court in *Allen v. United States* (1896), 164 U.S. 492, 41 L. Ed. 528, 17 S. Ct. 154, but that the *Allen* instruction had been much criticized, principally because it contained language thought to be coercive. The *Allen* instruction is not set forth verbatim in the opinion of the Supreme Court, but as paraphrased by the court the language in question was as follows:

"[I]f much the larger number were for conviction, a dissenting juror should consider whether

his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority." 164 U.S. 492, 501, 41 L. Ed. 528, 530-31, 17 S. Ct. 154, 157.

Although the instruction given in *Prim* did not contain the language just quoted, this court took the occasion to state its disapproval of that portion of the original *Allen* instruction. On the other hand, the court also rejected the position taken by the appellate court in *People v. Mills* (1971), 131 Ill. App. 2d 693, that no supplemental instruction of any kind should be given. (53 Ill. 2d 62, 74.) In *Prim* the court did not formulate a specific instruction to be used. It did, however, express approval of section 5.4 of the American Bar Association Standards Relating to Trial by Jury (1968), and in the exercise of its supervisory authority the court directed that in the future a trial court, when faced with a deadlocked jury, should comply with the guidelines contained in that section. 53 Ill. 2d 62, 74-76.

The court also expressed disapproval of other portions of the instruction which stated that if there were no agreement on a verdict, the case would have to be retried by a jury. Like statements appear in the instruction here. Although reference to the consequences of failure to reach a verdict is not a part of the American Bar Association guidelines, the court did not reverse the conviction, since it concluded that that portion of the charge could not be said "to have interfered with the deliberation of the jurors to the prejudice of the defendant or to have hastened the verdict." 53 Ill. 2d 62, 77.

The propriety of a supplemental instruction was also before the court in *People v. Canale* (1972), 52 Ill. 2d 107, decided a few months before *Prim*. In *Canale*, after the jury had been out for 5¼ hours, the foreman, in response to questions from the court, said that while the jury had not been able to reach a verdict he could not say whether or not further deliberation would be hopeless. The jury was called back again about an hour later without having reached a verdict, and this time the foreman said he thought that a verdict could be reached in a reasonable time. The court then instructed the jurors that in their deliberations they should exchange ideas with one another, but without suggesting that the views of the majority should be deferred to. This court held that that admonition was not error.

The same question was presented in *People v. Viser* (1975), 62 Ill. 2d 568. The instruction, referred to in the opinion as an *Allen* charge, had been given before the jury retired to deliberate, and the trial had occurred prior to *Prim*. The court held that the instruction did not require reversal.

The defendant contends first that delivery of the instruction was premature since the jury was not known to be deadlocked. We reject that contention. In determining how long a jury should be permitted to deliberate before a mistrial is declared and the jury is discharged, no fixed time can be prescribed, and great latitude must be accorded to the trial court in the exercise of its informed discretion. (*People v. Bean* (1976), 64 Ill. 2d 123, 127-28; *People v. Daily* (1968), 41 Ill. 2d 116, 121-22, *cert. denied* (1969), 395 U.S. 966, 23 L. Ed. 2d 752, 89 S. Ct. 2112; *People v. Mays* (1962), 23 Ill. 2d 520, 524; *People v. DeFrates* (1946), 395 Ill. 439, 445-46.) For similar reasons it is primarily the function of the trial court to determine, on the basis of such factors as the length of time already

spent in deliberation and the complexity of the issues before the jury, when the giving of a supplemental instruction becomes appropriate.

Section 5.4(a) of the American Bar Association Standards Relating to Trial by Jury, approved in *Prim,* authorizes the court to give a facilitative instruction to the jury even before it retires for its deliberations. And section 5.4(b) provides: "If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a)." While section 5 thus does not mandate that a deadlock instruction be given before the jury retires, it also does not require a court to delay giving a supplemental instruction until there has been a flat statement from the foreman that no verdict can be reached. Such a requirement would not be realistic, and we think it is sufficient if the court can perceive that the jury is having difficulty in reaching a verdict. In *Prim* the foreman stated that he thought there was a chance of reaching a verdict, and in *Canale* the foreman stated that he thought a verdict could be reached in a reasonable time. See also *People v. Anthony* (1975), 30 Ill. App. 3d 464; *People v. Munguia* (1975), 33 Ill. App. 3d 880; *People v. Wilson* (1976), 37 Ill. App. 3d 560; *People v. Brown* (1977), 48 Ill. App. 3d 632.

As the appellate court noted, the trial here was "relatively short with few witnesses and, as portrayed by the closing arguments of both sides, raised only one question; *i.e.,* whether or not Fleming's testimony was credible." (60 Ill. App. 3d 162, 175.) Moreover, the jury had shown no difficulty in understanding the instructions of law given to it, for it made no request to the court for clarification. The foreman stated that the jury had not been able to reach a verdict "completely," and that he could not say "at the moment" whether a verdict could be reached. The existence of a difference of opinion among

the jurors was confirmed by the jury's subsequent return of a finding relating to only one count of the indictment. Under the circumstances we cannot say that delivery of the instruction was premature.

The defendant next contends that the instruction was improper because it stated that if no verdict were reached a new trial would be necessary, a statement disapproved of in *Prim*. It is true that the court in *Prim* did direct that trial courts should conform deadlock instructions to the minimum standards suggested by the American Bar Association. The defendant overlooks, however, that that directive related to an instruction that the minority on a jury should defer to the majority. Such an instruction directs the jury to apply a criterion which is palpably incorrect. Because the State cannot appeal an acquittal, an *Allen* charge comes before a reviewing court in cases where the trial in which it was used ends in a guilty verdict. Since the minority in such a case consists of those jurors not believing that the accused is guilty, the effect of the charge is to subvert the right of an accused not to be convicted without a unanimous verdict. *Billeci v. United States* (D.C. Cir. 1950), 184 F.2d 394, 403; Comment, *Deadlocked Juries and Dynamite: A Critical Look at the "Allen Charge,"* 31 U. Chi. L. Rev. 386, 389-90 (1964).

With respect to the instruction given here we adhere to the views expressed in *Prim* that it is not helpful and is in part incorrect. *Prim* did not treat the use of such an instruction as automatically creating reversible error, however, and we think it cannot be deemed coercive where the jury had been deliberating for some six hours before the instruction was given, and continued to deliberate for three hours thereafter. Nothing in *Prim,* where the court found no coercion although the jury deliberated only 15 minutes after receiving the instruction, requires a reversal.

As to the polling of Mrs. Goss, the defendant argues that her initial response of "compromise" possibly implied

dissent from the verdict, and that the trial court was remiss in failing to explore that possibility. After Mrs. Goss said "compromise" the defendant did not object to the judge's direction that the polling proceed with the other jurors. After the entire poll was completed the defendant did not move either that the jury be returned for further deliberations or that a mistrial be declared. Moreover, in his post-trial motion the defendant did not advance his present argument but instead took the position that the term "compromise" itself expressed dissent. The State suggests that the claim of error now asserted has been waived under the doctrine of *People v. Pickett* (1973), 54 Ill. 2d 280, 282-83. The appellate court considered the defendant's claim on its merits, however, and we elect to do the same.

We will assume that the trial court was obliged to inquire into Mrs. Goss' unresponsive answer. The report of proceedings shows, however, that the trial court did so and that it gave her ample opportunity to repudiate her recorded verdict if she so desired. There is no basis whatever in the record for the defendant's claim that Mrs. Goss was confused or intimidated by the court's questioning or that she was prevented from giving a negative answer. The defendant relies upon two decisions of the appellate court, *People ex rel. Paul v. Harvey* (1972), 9 Ill. App. 3d 209, and *People v. Kellogg* (1979), 68 Ill. App. 3d 456.

Neither *Harvey* nor *Kellogg* is contrary to the result which we reach here. In *Harvey,* where the verdict was in favor of the defendant, the colloquy between the court and juror went as follows:

> "THE COURT: Is this and was this your verdict?
> JUROR: Well, it wasn't exactly, no.
> THE COURT: Did you sign this?
> JUROR: Yes, I did.
> THE COURT: Then it's your verdict." 9 Ill. App. 3d 209, 210.

In reversing, the appellate court held that the juror's initial answer did not show whether or not she disagreed with the verdict, and that the trial judge, in treating the signing of the verdict as conclusive, had foreclosed the juror from showing that she did in fact dissent.

In *Kellogg,* after a guilty verdict was returned, each juror was asked, "Was this then and is this now your verdict?" All but one answered in the affirmative. The following colloquy took place with the remaining juror:

> "THE CLERK: Susan M. Vesecky, was this then and is this now your verdict?
>
> JUROR VESECKY: Yes. Can I change my vote?
>
> THE COURT: The question is, was this then and is this now your verdict?
>
> JUROR VESECKY: (No response.)
>
> THE COURT: Was this then and is this now your verdict?
>
> JUROR VESECKY: Yes, sir." 68 Ill. App. 3d 456, 457-58.

Again, in the view of the appellate court the juror's initial response could be taken as implying a desire to disavow her assent to the verdict, and the trial judge, by doing no more than to repeat the double-barreled question previously put, effectively prevented the juror from making her disavowal explicit. (*Cf. Goshey v. Dunlap* (1973), 16 Ill. App. 3d 29, 34.) In the case at bar the questions put to Mrs. Goss did afford her the opportunity of making an unambiguous reply, and the latter disposed of any question created by her previous response. See Annot., 25 A.L.R.3d 1149, 1156-59 (1969).

We consider finally the matter of Mrs. Goss' deposition. This deposition, which is described as a discovery deposition, was taken after judgment had been entered and the jury discharged. The record shows no order authorizing the deposition, and no notice of it was given to the State. Counsel for the State was not present at the deposition, and there was accordingly no cross-examination. The

appellate court did not concern itself with these procedural aspects, but considered the question before it to be whether Mrs. Goss' statement, if uncontroverted, would be sufficient to invalidate the verdict. We proceed on the same basis.

The scope of the rule against impeaching a verdict was given extensive consideration in *People v. Holmes* (1978), 69 Ill. 2d 507. The holding in *Holmes* was that the testimony or affidavit of a juror could be admitted for the purpose of showing that the jury had made a private investigation into evidentiary matters bearing on an issue in the case, thus availing itself of information which the defendant had had no opportunity to refute. *Holmes* expressly preserved, however, the almost universally followed rule that the use of affidavits or testimony to show "the motive, method or process by which the jury reached its verdict" was not permitted. 69 Ill. 2d 507, 511.

*United States v. Schroeder* (8th Cir. 1970), 433 F.2d 846, *cert. denied* (1971), 401 U.S. 943, 28 L. Ed. 2d 224, 91 S. Ct. 951, is also pertinent. There a juror signed an affidavit stating that he did not believe that the defendant was guilty and had voted for conviction against his will, although the juror had answered in the affirmative when polled on his guilty verdict. A claim that the verdict against the defendant was not unanimous was rejected by the court. It stated:

> "After a jury has given its verdict, has been polled in open court and has been discharged, an individual juror's change of mind or claim that he was mistaken or unwilling in his assent to the verdict comes too late. Under the circumstances of this case, the verdict must stand unimpeached." (433 F.2d 846, 851.)

*Cf. United States v. Johnson* (5th Cir. 1974), 495 F.2d 1097, 1102-03.

The defendant argues that this case does not involve

an attempt to impeach a verdict, since there was no genuine verdict, Mrs. Goss not having "consented" to it. We do not find that argument persuasive. Mrs. Goss' statement did not refer to any "extraneous prejudicial information" or "outside influence" (*People v. Holmes* (1978), 69 Ill. 2d 507, 516), unlike the case in *Holmes*. Apart from her account of the proceedings in open court when she was polled, Mrs. Goss' statement describes a process by which the verdict was reached, her motive for joining in it, and the motive underlying her response to the poll. As such the statement was inadmissible under the rule stated in *Holmes* and in other decisions dealing with this subject. *Smith v. Eames* (1841), 4 Ill. (3 Scam.) 76, 81; *People v. Tobe* (1971), 49 Ill. 2d 538; *United States ex rel. Tobe v. Bensinger* (7th Cir. 1974), 492 F.2d 232; *cf. People v. Spice* (1977), 54 Ill. App. 3d 539.

For the reasons given above, the judgment of the appellate court is affirmed.

*Judgment affirmed.*