960 N.E.2d 65 (2011)
355 Ill. Dec. 622
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Antonio S. SULLIVAN, Defendant-Appellant.
No. 4-10-0005.
Appellate Court of Illinois, Fourth District.
September 21, 2011.
Rehearing Denied October 18, 2011.
*66 Michael J. Pelletier, State Appellate Def., Karen Munoz, Deputy Defender, Michael Delcomyn (argued), Asst. Appellate Defender, Office of State App. Defender, for Antonio Sullivan.
William A. Yoder, McLean County State's Attorney, Patrick Delfino, Director, Robert J. Biderman, Dep. Director, Luke McNeill (argued), Staff Atty., State's Attorneys Appellate Prosecutor, for People.

OPINION
Justice POPE delivered the judgment of the court, with opinion.
¶ 1 In January 2009, a jury convicted defendant, Antonio S. Sullivan, of aggravated robbery (720 ILCS 5/18-5(a) (West 2008)). In June 2009, the trial court sentenced him to 15 years' imprisonment.
¶ 2 Defendant appeals, arguing his conviction should be reversed because he was convicted by a biased jury. Alternatively, defendant contends the trial court's failure to hold an evidentiary hearing regarding the alleged juror bias violated his due process rights. We affirm.

¶ 3 I. BACKGROUND
¶ 4 On November 12, 2008, the State charged defendant, by indictment, with aggravated robbery (720 ILCS 5/18-5(a) (West 2008)).
¶ 5 During defendant's January 2009 trial, Jeffrey Brittain, a field executive with State Farm Insurance Company living in Suffolk, Virginia, testified he was in Bloomington, Illinois, between October 27, 2008, and November 7, 2008, for a company training conference. Brittain was staying in a hotel on Veteran's Parkway. On October 31, 2008, Brittain took the hotel shuttle downtown to a watch a football game with another conference attendee at a sports bar. After the game, they went to another bar. Brittain admitted consuming alcoholic beverages but denied being intoxicated. Brittain testified he was having trouble finding a cab because it was Halloween night and a lot of people were downtown. Brittain testified after waiting behind a line of people who were also waiting for a cab, he walked down the street and away from the crowd to increase his chances of catching a cab. Brittain walked approximately two blocks when defendant drove up and offered Brittain a ride. Brittain accepted and offered defendant $20 to drive him to his hotel. During his testimony, Brittain identified defendant as the person who gave him the ride.
¶ 6 Brittain testified he told defendant he did not have any money and needed to withdraw cash from an automated teller machine (ATM). According to Brittain's testimony, defendant asked him if he wanted any drugs or women. Brittain testified he told defendant he was ready to go home and asked him to stop at an ATM. Defendant stopped at a gas station and Brittain withdrew $200. Brittain testified he was going to need to have cash on hand because he was going to a college football game the next day. Brittain did not recall if defendant accompanied him into the gas station. However, Brittain testified he told defendant he withdrew $200 from the ATM.
¶ 7 Brittain returned to the car, and defendant drove down Veteran's Parkway in the direction of the hotel. However, instead of stopping, defendant drove past the hotel. When Brittain asked defendant what he was doing, defendant replied, "We're just going to go down here and check on a couple things." Defendant turned off of Veteran's Parkway, stopped in a residential neighborhood, and put the car in park. Brittain asked defendant *67 what they were doing there. Defendant replied, "Yeah, I'm going to check on something in that house right there." At that point, defendant demanded Brittain give him his cash and his Blackberry cellular phone. Brittain testified he observed what he thought to be "something" under defendant's shirt pointed at him. Brittain testified defendant "raised it up" and repeated his demand for the cash and phone. After Brittain gave defendant both the money and his phone, defendant instructed Brittain to get out and run, which he did. Brittain testified he flagged down a passing car and used one of the passengers' cell phones to call police.
¶ 8 While defendant did not testify, the jury viewed portions of his interview with police. During the interview, defendant admitted giving rides to various people on Halloween night. Defendant stated he had agreed to give a ride to a "drunk ass white dude." Defendant explained they stopped at a gas station where defendant bought a scratch-off lottery ticket and won $100. However, the station would not cash it because it was after hours. According to defendant, Brittain agreed to buy the ticket from defendant. Defendant maintained Brittain then misplaced the ticket and accused defendant of taking it. Defendant denied taking the ticket and the two argued. Defendant stated he tricked Brittain into thinking the ticket was in the back of the car. When Brittain got out of the car to look for it, defendant drove off.
¶ 9 On January 22, 2009, the jury convicted defendant of aggravated robbery. After the verdict was announced, the trial court polled the jury, and each juror confirmed the guilty verdict.
¶ 10 Following trial, two jurors wrote letters to the trial court. The first juror's letter stated he and "a couple of the other jurors were not completely sure of what [the jury instructions] meant by the word [`]threatening.[']" The second juror's letter stated, "Although I signed the guilty verdict form, I did not then and do not now believe that the [S]tate proved [its] case beyond a reasonable doubt." The second letter also alleged certain elements of the jury deliberation were improper. Specifically the juror wrote (1) he felt pressured to conform to the majority opinion and, as a result, capitulated to their view, (2) the jurors "relied upon emotion rather than reason and logic to reach their verdict," and (3) the deliberations were tainted when the foreman misstated the initial vote tally. The letter also alleged the following:
"Many jurors ignored the instruction that the defendant was entitled not to testify and instead asserted that the defendant's declination to take the stand in his own defense was an indication of his guilt. The bulk of the discussion in the jury room consisted of a rehash of the testimony and a desultory exchange of overall impressions of the credibility of the witnesses with the consensus being that the defendant was guilty simply because [the victim] was the more credible witness, not because the three propositions necessary to sustain the charge of aggravated robbery had been proved beyond a reasonable doubt."
The juror's letter ended by stating, "Because I did not vote my conscience and allowed my verdict to be dictated by the tyranny of the majority, and because of the irregularities during deliberations noted above, I ask the court to set aside the guilty verdict."
¶ 11 Thereafter, defendant amended his pending posttrial motion to allege "certain jury misconduct occurred during jury deliberations and the resultant verdict was improper and unfair."
¶ 12 During the hearing on defendant's motion, his trial counsel argued the two *68 jurors who wrote the letters only voted to convict defendant as a result of undue coercion, undue influence, or misconduct. The State argued (1) under People v. Preston, 76 Ill.2d 274, 29 Ill.Dec. 96, 391 N.E.2d 359 (1979), the trial court should not allow or give any weight to the letters and (2) when the jury was polled, the jurors had a chance to speak up, which they did not do. The trial court denied defendant's motion and found the following:
"The juror letters presented a fairly novel experience for the Court; as [counsel] indicated, having two in one case is unusual. I shared those with counsel not because I believed that they represented a significant barrier to sustaining the jury's verdict, but because I wanted to be updated in terms of the applicable authority. The authority does seem very subtle. It's adequately set forth in the People v. Preston decision, and that decision makes clear that when you're considering the propriety of a jury verdict, it simply is not permissible to consider the use of affidavit or testimony or, in this case letters, to show the motive, method, or process by which the jury reached its verdict. The letters from thefrom the jurors contain characterizations that the jury process was improper, that there was [sic ] actions on the part of certain jurors whowhich were ultimately perceived by him subjectively to be improper actions toward him, but there's just nothing objectively verifiable in [the juror's] letter that suggests there was any such objective impropriety, such as improper evidence being considered, investigation by jurors producing such improper evidence, or actual coercion or manipulation of undue influence. Subjectively, I can understand how jurors can come to second-guess their work, but that doesn't diminish the authenticity of their work, certainly not in these circumstances. Based upon those findings, the Motion For a New Trial is denied." (Emphasis added.)
¶ 13 This appeal followed.

¶ 14 II. ANALYSIS
¶ 15 On appeal, defendant argues his conviction should be reversed and the cause remanded for a new trial because his conviction by a biased jury amounts to structural error. Alternatively, defendant contends the trial court erred in failing to hold an evidentiary hearing regarding the alleged juror bias and that failure violated his right to due process. We note, defendant has focused his argument on appeal on the contents of the second lettermore specifically, the allegation the jury held defendant's decision not to testify against him. As a result, we confine our discussion to this issue.

¶ 16 A. Plain-Error Doctrine
¶ 17 Defendant concedes he failed to preserve the specific issue of juror bias for review but maintains the issue may be addressed by this court under the plain-error doctrine.
¶ 18 The plain-error doctrine allows a reviewing court to consider an unpreserved and otherwise forfeited error when "(1) the evidence is close, regardless of the seriousness of the error[;] or (2) the error is serious, regardless of the closeness of the evidence." People v. Herron, 215 Ill.2d 167, 186-87, 294 Ill.Dec. 55, 830 N.E.2d 467, 479 (2005). However, before we consider the plain-error doctrine, we must determine whether the trial court committed any error. People v. Piatkowski, 225 Ill.2d 551, 565, 312 Ill.Dec. 338, 870 N.E.2d 403, 410-11 (2007). We review the trial court's finding the letter was inadmissible to show juror bias for an abuse of discretion. See People v. Nitz, 219 Ill.2d *69 400, 424, 302 Ill.Dec. 418, 848 N.E.2d 982, 997 (2006).

¶ 19 B. Juror Letter
¶ 20 Citing language from recent supreme court cases involving voir dire and Illinois Supreme Court Rule 431(b) (eff. May 1, 2007), defendant argues this court should reverse because defendant was convicted by a biased jury, which is structural error. See People v. Glasper, 234 Ill.2d 173, 200, 334 Ill.Dec. 575, 917 N.E.2d 401, 418 (2009); People v. Thompson, 238 Ill.2d 598, 609, 345 Ill.Dec. 560, 939 N.E.2d 403, 411 (2010). While defendant's statement of the law may be correct on its face, his argument assumes what he seeks to prove while ignoring whether the trial court could consider the juror's letter in the first place.
¶ 21 In general, a jury verdict may not be impeached by the testimony of the jurors. People v. McDonald, 168 Ill.2d 420, 457, 214 Ill.Dec. 125, 660 N.E.2d 832, 848 (1995); People v. Holmes, 69 Ill.2d 507, 511, 14 Ill.Dec. 460, 372 N.E.2d 656, 658 (1978). "It is well settled that a statement by a juror taken after the jury has rendered its verdict, has been polled in open court, and has been discharged will not be admitted to impeach the jury's verdict." People v. Hobley, 182 Ill.2d 404, 457, 231 Ill.Dec. 321, 696 N.E.2d 313, 339 (1998); Preston, 76 Ill.2d at 288-89, 29 Ill.Dec. 96, 391 N.E.2d at 365-66. Further, this rule prevents consideration of posttrial juror testimony showing "the `motive, method or process by which the jury reached its verdict.'" Hobley, 182 Ill.2d at 457, 231 Ill.Dec. 321, 696 N.E.2d at 339 (quoting Holmes, 69 Ill.2d at 511, 14 Ill. Dec. 460, 372 N.E.2d at 658). An exception to this rule is made in situations where proof of improper external influence on the jury is shown. Holmes, 69 Ill.2d at 511, 14 Ill.Dec. 460, 372 N.E.2d at 658; see also Hobley, 182 Ill.2d at 458-59, 231 Ill. Dec. 321, 696 N.E.2d at 339-40 (involving, inter alia, nonjuror communication with jurors during deliberations); Holmes, 69 Ill.2d at 510, 14 Ill.Dec. 460, 372 N.E.2d at 657 (concerning a jury's independent investigation and gathering of evidence not presented during trial).
¶ 22 "The difference between the two types of testimony is that the former attempts to show the working of the minds of individual jurors, while the latter speaks merely to the extraneous existence of conditions or occurrence of events." Nitz, 219 Ill.2d at 424-25, 302 Ill.Dec. 418, 848 N.E.2d at 997. However, even in cases where jurors may testify as to the nature of outside influences, evidence of the effect of those influences on the mental processes of the jurors is inadmissible. Holmes, 69 Ill.2d at 514, 14 Ill.Dec. 460, 372 N.E.2d at 659.
¶ 23 In this case, no outside influence on the jury's deliberations is asserted. Instead, this case turns on whether the issues raised pertain to the motive, method, or process of the jury deliberation. We note, with the exception of the issue concerning the jurors' holding defendant's failure to testify against him, defendant concedes the other issues raised in the letter relate to the motive, method, or process of the jury, and are thus barred from consideration.
¶ 24 The facts underlying the supreme court's decision in Nitz are strikingly similar to facts of this case. In Nitz, a postverdict affidavit from a juror alleged, inter alia, "`[m]any jurors commented on the fact that [defendant] did not testify and because [defendant] did not testify, he must be guilty.'" Nitz, 219 Ill.2d at 421, 302 Ill.Dec. 418, 848 N.E.2d at 995. The supreme court found although the defendant argued the affidavit showed juror prejudice not disclosed during voir dire, it *70 was still inadmissible because it concerned the jury's motive, method, or process of deliberations. Nitz, 219 Ill.2d at 426, 302 Ill.Dec. 418, 848 N.E.2d at 998.
¶ 25 While defendant concedes Nitz could be read to support the proposition the alleged juror bias expressed in the letter is included in the motive, method, or process of the jury's deliberation, defendant attempts to distinguish Nitz by arguing the issue of juror bias was not before the supreme court in that case. We disagree. In its opinion, the supreme court specifically stated it considered "whether the trial court erred when it declined to admit defendant's evidence of alleged juror bias." Nitz, 219 Ill.2d at 423, 302 Ill.Dec. 418, 848 N.E.2d at 996.
¶ 26 Like the juror's allegations in Nitz, the allegations in this case are not subject to extraneous proof, i.e., they cannot be verified by evidence other than the jury's own motive, method, or process. Instead, the allegations attempt to show the working of the minds of individual jurors. As a result, the allegations may not be considered to impeach the jury's verdict. See Holmes, 69 Ill.2d at 513-14, 14 Ill.Dec. 460, 372 N.E.2d at 658-59 (juror testimony not subject to verification by other evidence is inadmissible). Further, the trial court in this case polled the jury, and each juror, including the two who wrote the postverdict letters, unequivocally confirmed their guilty vote. See Hobley, 182 Ill.2d at 457, 231 Ill.Dec. 321, 696 N.E.2d at 339; Preston, 76 Ill.2d at 288, 29 Ill.Dec. 96, 391 N.E.2d at 366 (juror's later change of mind, claim he was mistaken, or reticence in his assent to the majority is inadmissible to impeach the guilty verdict once the jury has been polled and discharged). The trial court did not abuse its discretion in refusing to consider the allegations contained in the letter. Because we do not find the trial court erred we do not reach the issue of plain error.
¶ 27 Finally, because we have ruled the trial court correctly found the letter inadmissible, we need not address defendant's other claim, i.e., the trial court erred in failing to hold an evidentiary hearing regarding juror bias.

¶ 28 III. CONCLUSION
¶ 29 For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we grant the State its statutory assessment of $75 against defendant as costs of this appeal.
¶ 30 Affirmed.
Justices STEIGMANN and COOK concurred in the judgment and opinion.