**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240356-U

Order filed November 20, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Iroquois County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-24-0356 Circuit No. 21-CF-79 |
| JASON D. MARRS, | ) ) ) | Honorable Michael C. Sabol, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices Peterson and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  Defendant's right to a fair trial was not violated where the circuit court adequately compensated for any potential sympathy for the victim, who briefly possessed a comfort item prior to testifying, and defendant failed to establish that the item's presence was presumptively prejudicial.

¶ 2     Defendant, Jason D. Marrs, appeals his convictions for criminal sexual assault, arguing that he was unfairly prejudiced and denied the right to a fair trial because the jury was exposed to extraneous information when the alleged victim approached the witness stand holding a teddy bear. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        After a jury trial in October 2023, defendant was convicted of six counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(3) (West 2020)) and sentenced to a total of 42 years' imprisonment. The charges alleged that from May through July 2021, defendant engaged in oral and anal intercourse with his 16-year-old stepdaughter, K.J.

¶ 5        At trial, K.J.'s mother testified that defendant was her husband and they had separated in May 2021. Pursuant to a written separation agreement, defendant became the primary caretaker of their two biological children and four of his stepchildren, which included K.J. In July 2021, K.J.'s mother contacted police after she discovered inappropriate text messages and photographs involving defendant and K.J. on K.J.'s cell phone.

¶ 6        K.J.'s younger sister, V.J., testified that she had taken several of the photographs of defendant and K.J. that were found on K.J.'s phone. The photographs were admitted into evidence and showed defendant kissing and embracing K.J. Defendant could be seen touching K.J.'s breast in one photograph and her buttocks in another. V.J. stated that she thought it was weird that defendant was "touchy touchy" with K.J. and that he would grab K.J. by the hips and "kiss [her] for a long time." V.J. estimated that approximately five times a week, defendant and K.J. would enter a bedroom together and lock the door. V.J. testified that on one occasion, she walked by the bathroom and saw defendant shaving K.J.'s genital area.

¶ 7        K.J. testified that after her mother moved out of the home, defendant began kissing and touching her. Over the next three months, defendant repeatedly engaged in oral and anal intercourse with K.J. and threatened that if she told anyone she would never see her mother again and her siblings would have to live in separate homes. K.J. confirmed that defendant had exchanged numerous romantic text messages with her, which were admitted into evidence. In

2

one message, defendant referred to K.J. as "my queen & my one & only. My partner, lover, & mate for life."

¶ 8　　　When K.J. was recalled for cross-examination, she held a small teddy bear as she walked to the witness stand. A sidebar was immediately requested by defense counsel, and the jury was excused from the courtroom. Defense counsel then asserted that it was inappropriate for K.J. to have the bear in front of the jury. The court instructed K.J. to conceal the bear and she complied by placing it in her pocket. After K.J.'s cross-examination, defense counsel moved for a mistrial, arguing that it was "exceptionally prejudicial" to defendant for the jury to see K.J. holding the teddy bear when she walked into the courtroom to testify. The State countered that the bear was only briefly visible prior to K.J.'s cross-examination, as the issue was promptly addressed by the court once it was raised by defense counsel. The court denied the motion. Defendant did not testify or present any evidence. Prior to deliberations, the court instructed the jury that they should not be influenced by sympathy or prejudice and that they could only consider evidence received by the court—specifically the admitted testimony of witnesses, exhibits, and stipulations. The jury found defendant guilty on all counts.

¶ 9　　　Defendant subsequently filed an amended motion for a new trial. In his motion, defendant argued that the court erred in denying his motion for mistrial because his right to a fair trial was compromised when K.J. entered the courtroom carrying a teddy bear that was visible to the jury. In support of his contention, defendant asserted that four posttrial juror interviews conducted by a defense investigator revealed that K.J.'s use of the teddy bear as a "coping mechanism" was discussed during jury deliberations. Defendant included a document from the investigator summarizing the juror's statements in his motion. The State argued that the investigator's written interview summaries constituted double hearsay and contained no

3

information to suggest that the discussion of the bear influenced the jurors' determination as to K.J.'s credibility or defendant's guilt. The court denied defendant's motion, finding that defendant had failed to demonstrate that the jurors were prejudiced or improperly influenced by observing K.J. holding the bear. The court noted that the summaries were hearsay "written for the benefit and at the request of the defendant" that did not provide information as to what questions the jurors were asked. The court stated that the summaries did not "rise to the level to suggest that the jurors were improperly influenced thereby violating defendant's right to a fair trial and due process." The court further noted defendant could have requested a jury instruction or admonition regarding the bear.

¶ 10                                II. ANALYSIS

¶ 11        On appeal, defendant argues that the court erred in denying his motion for a new trial because he was unfairly prejudiced by the jury's exposure to extraneous information. Defendant contends that his right to a fair trial was compromised when the jury witnessed K.J. carrying a teddy bear to the witness stand because it created undue sympathy for her as a witness and bolstered her credibility.

¶ 12        At the outset, defendant has not cited, nor has our research revealed, any authority demonstrating that the possession of a comfort item by a witness constitutes extraneous information. In Illinois, cases addressing the issue of extraneous information typically involve circumstances where jurors were exposed to some type of factual information related to the trial. *People v. Willmer*, 396 Ill. App. 3d 175, 178-79 (2009) (juror shared information he had found online defining the charged offense during deliberations); *People v. Collins*, 351 Ill. App. 3d 175, 177 (2004) (jury foreman visited the scene of the crime); *People v. Caguana*, 2020 IL App (1st) 180006, ¶ 15 (juror's online research revealed that defendant's father had attempted to have

4

witnesses killed); *People v. Holmes*, 69 Ill. 2d 507, 509-10 (1978) (jurors conducted an independent investigation related to shoe print evidence); *People v. Glover*, 2023 IL App (2d) 220178, ¶ 21 (jury inadvertently received a copy of the State's PowerPoint presentation containing content that had not been admitted into evidence); *People v. Hayes*, 70 Ill. App. 3d 811, 827 (1979) (jurors saw inadmissible photographs of the deceased victim held by the prosecuting attorney during witness testimony).

¶ 13     Defendant's attempt to classify the brief presence of a comfort item, specifically a small teddy bear, within this category of cases is particularly unpersuasive in light of *People v. Tapley*, 2020 IL App (2d) 190137, ¶¶ 80-81. In *Tapley*, the court rejected a similar argument by the defendant that the presence of a comfort dog during the victim's testimony created undue sympathy for the victim and violated his right to a fair trial. *Id.* Noting that the presence of a comfort dog is not inherently prejudicial, the court concluded that the circuit court had adequately compensated for any potential sympathy for the victim by implementing measures to minimize the jury's view of the dog during testimony and providing jury instructions. *Id.*

¶ 14     Accordingly, we find that K.J.'s possession of a comfort item that was only momentarily visible is not inherently prejudicial and defendant cannot demonstrate that it created any undue sympathy from the jury beyond the normal human response to a child's testimony about their sexual abuse by an adult perpetrator. See *id.* ¶ 80. Additionally, the circuit court adequately compensated for any potential sympathy for K.J. by immediately directing that the bear be concealed prior to beginning her testimony. See *id.* ¶ 81. Although defendant chose not to request a jury instruction or admonishment specifically directing the jury to disregard the bear, the record reflects that the court instructed the jury to avoid being influenced by sympathy and to

consider only the evidence that had been admitted by the court. See *id.* ("A jury is presumed to follow a trial court's jury instructions.").

¶ 15       Nonetheless, even if the teddy bear qualified as extraneous information, not every instance in which extraneous or unauthorized information reaches the jury results in error so prejudicial as to warrant reversal. See *Holmes*, 69 Ill. 2d at 519. Prejudice is presumed if a defendant demonstrates that the information relates directly to something at issue in the trial and may have influenced the verdict. *Collins*, 351 Ill. App. 3d at 179. If a presumption of prejudice arises, the State then has the burden of showing that the incident is harmless. *Id.* Where a jury has been exposed to improper extraneous information, the proper inquiry is "whether the conduct at issue involved such a probability of resulting prejudice that the verdict must be deemed inherently lacking in due process." *Willmer*, 396 Ill. App. 3d at 181. The denial of a motion for a new trial will not be overturned absent an abuse of discretion. *Id.*

¶ 16       The testimony of a juror generally may not be used to impeach a jury's verdict. *People v. Hobley*, 182 Ill. 2d 404, 457 (1998). However, juror testimony is admissible if offered as proof of improper extraneous influences on the jury. *Id.* at 457-58. A juror's affidavit or testimony alleging exposure to prejudicial extraneous information is sufficient to raise the presumption of prejudice. *People v. Williams*, 209 Ill. 2d 227, 241 (2004).

¶ 17       Defendant argues that the court erred in applying the incorrect legal standard by failing to recognize that his motion for a new trial had raised a presumption of prejudice, effectively shifting the burden to the State to demonstrate that the teddy bear was harmless beyond a reasonable doubt. We reject defendant's contention, as the supporting evidence attached to his motion failed to raise a presumption of prejudice. Defendant did not include any affidavits from the jurors in his motion. Rather, defendant provided interview summaries written by a defense

investigator. The summaries only contained bullet-point notations of what each juror purportedly indicated while speaking with the investigator, without providing any questions that the investigator asked or any verbatim statements from the jurors. Unlike sworn affidavits directly from the jurors themselves, these summaries lack the specificity and veracity needed to effectively establish that the teddy bear may have somehow influenced the verdict. See *Willmer*, 396 Ill. App. 3d at 182 (juror affidavit alleging exposure to improper extraneous information provided "specific, detailed and nonconjectural evidence" sufficient to raise presumption of prejudice); *People v. Polk*, 2024 IL App (1st) 181933, ¶¶ 134, 137-38 (affidavit of the codefendant's sister, raising secondhand allegations of jury misconduct obtained through communication with a juror, was inadequate to reliably assess the juror's claim). As the interview summaries are insufficient to raise a presumption of prejudice, the court did not abuse its discretion in denying defendant's motion for a new trial. See *People v. Harrison*, 2018 IL App (3d) 150419, ¶ 11 (an abuse of discretion occurs only when the court's decision is arbitrary, fanciful, or unreasonable).

¶ 18       Furthermore, the limited presence of the teddy bear cannot be presumed prejudicial where the evidence presented at trial was not close as to whether the elements of the charged offenses were proven beyond a reasonable doubt. See *People v. Rivers*, 410 Ill. 410, 419 (1951). To establish the offense of criminal sexual assault, the State was required to prove that: (1) defendant committed an act of sexual penetration, (2) defendant was a family member of the victim, and (3) the victim was under 18 years of age. See 720 ILCS 5/11-1.20(a)(3) (West 2020). Here, defendant did not dispute that he was K.J.'s stepfather or that K.J. was under the age of 18 at the time of the alleged offenses. At trial, K.J. testified that defendant had committed the alleged acts against her and other evidence presented by the State supported her claim. V.J.

7

testified that defendant and K.J. regularly spent time together alone in a bedroom with the door locked, and that she had witnessed defendant shaving K.J.'s genital area. Photographs were introduced showing defendant kissing K.J. and touching her breast and buttocks. Additionally, defendant sent K.J. a multitude of text messages that were romantic in nature and referred to K.J. as his "lover"—a term implicating the existence of a sexual relationship. The State presented testimony from multiple witnesses, photographs, and text messages, all which established defendant's guilt. Defendant presented no contrary evidence to dispute the charges, solely relying on challenging K.J.'s credibility. K.J.'s credibility was not bolstered by the teddy bear but instead corroborated by the independent evidence. Therefore, the evidence overwhelmingly supported defendant's guilt such that no prejudice resulted.

¶ 19                                    III. CONCLUSION

¶ 20        The judgment of the circuit court of Iroquois County is affirmed.

¶ 21        Affirmed.