ANTHONY BROWN, Plaintiff-Appellant, *v.* DONALD E. JOHNSON *et al.*, Defendants-Appellees.

Third District    No. 80-5

Opinion filed February 6, 1981.—Rehearing denied March 6, 1981.

Joseph T. McGuire and Stephen C. Schulte, both of Perz & McGuire, of Chicago, for appellant.

Duncan B. Cooper, III, and B. Douglas Stephens, Jr., both of Heyl, Royster, Voelker & Allen, of Peoria, for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

The original action underlying this appeal was a suit for damages for injuries the plaintiff, Anthony Brown, suffered when defendant Donald E. Johnson, driving his automobile in the course of his employment with defendant G & M Distributors, made a left turn across the path of plaintiff's oncoming motorcycle. Following a jury trial, judgment was entered on the jury's verdict in favor of the defendants and against the plaintiff. The plaintiff appealed from the order of the trial court denying his post-trial motion. This court's opinion, issued in response to the plaintiff's appeal, is contained in *Brown v. Johnson* (1978), 60 Ill. App. 3d 76, 378 N.E.2d 757.

Among the issues raised by the plaintiff in his first appeal was whether the trial court erred in refusing to consider an affidavit by court reporter Emily Stessman concerning the post-trial statements of juror Robert Folkland. The day after the trial (July 2, 1976), plaintiff's attorney, Joseph Edler, with the permission of the court and in the presence of Ms. Stessman, asked Folkland numerous questions about the trial. Most of the questions related to Mr. Folkland's understanding and comprehension of both the instructions and the various legal issues involved in the case. During the questioning, Edler asked Folkland if John Strader, one of the defense witnesses, was credible. Briefly, Strader had testified that at the time of the accident involving the plaintiff's motorcycle and defendant's automobile, he was standing inside of Black's Radio and Television store in Galesburg. Just prior to the collision he looked out of the store's window and observed plaintiff's motorcycle traveling at a high rate of speed toward the intersection where the accident with defendant's car occurred. The following colloquy ensued between Edler and Folkland:

"Q. What was your—How did you accept the witness Strader?

A. How did I accept him?

Q. Did you believe what he said? Was he credible?

A. I don't remember now.

Q. He was the one standing in the window looking out of the window.

A. Yeah. One of the guys went to see. You know he questioned

about him—whether he could see a block and a half away and one of the jurors went over there and looked out of that window.

Q. When did they do that?

A. Let's see. It was the last day of the trial. Maybe a day before. I'm not sure. Might have been the day before. But he said he could see down that far because that's only a short block.

Q. Did they believe what Mr. Strader said?

A. Right."

On July 7, 1976, Edler had a second conversation with Folkland, again in the presence of Ms. Stessman. The relevant portion of that conversation is as follows:

"Mr. Edler: Hi, Bob. Bob, the reason I stopped over here is to talk to you about the statement that I took from you last week where you told me that one of the jurors went over to Black's T.V. Store and looked out of the window to see if he could see what the witness, Mr. Strader, testified to, and on Sunday when I spoke with you on the telephone you told me you thought there might have been at least two of the jurors that went over and looked out of the window. Both times you told me you didn't recall who they were. Have you been able to think of their names since I last talked to you?

Mr. Folkland: No. There may have been two or three that went over there.

\* \* \*

Q. Well, Bob, the reason that I'm here is to ask you if you would sign an Affidavit to that. Let me read it to you. (Mr. Edler reads Affidavit.)

A. Well, I don't know.

Q. Well, Bob, is it true?

A. Yeah, it's true, but I'm not going to sign anything.

Q. Okay, Bob, I won't ask you again. It has to be up to you and your own conscience.

A. But I know two or three of them went out there.

Q. Okay. That's fine. I won't bother you with this any more."

In light of these revelations the plaintiff alleged in his post-trial motion that the unauthorized visit to the accident scene by one or more jurors had so tainted the jury verdict that a new trial was warranted. The trial court, however, denied the plaintiff's motion without considering the substance of either Ms. Stessman's affidavit or juror Folkland's statements. (See *Wyckoff v. Chicago City Ry. Co.* (1908), 234 Ill. 613, 85 N.E. 237.) On appeal, this court, relying on the reasoning of the subsequently decided Illinois Supreme Court case of *People v. Holmes* (1978), 69 Ill. 2d 507, 372 N.E.2d 656, remanded the cause for a hearing to allow the trial

court "an opportunity to hear evidence concerning whether the jury had in fact considered extraneous matters which were prejudicial to the plaintiff." *Brown v. Johnson* (1978), 60 Ill. App. 3d 76, 80, 378 N.E.2d 757, 760.

On July 5, 1978, the hearing pursuant to our mandate was held. The trial judge and the attorneys agreed upon a series of questions to be asked by the court. The first question was whether the jurors visited the scene of the occurrence or Black's T.V., from which eyewitness Strader had viewed the accident scene, any time during the course of the trial. The second question was phrased as follows: "Did you gain knowledge that any member of the jury visited Black's T.V. or the scene of the occurrence?" If a juror answered "No" to these questions, it was agreed that the juror would be excused, with no further questioning. An affirmative answer to the second question would prompt further inquiry by the judge to elicit the name of the juror who visited the scene and the date of the visit.

Immediately following the preliminary conference, the first witness was sworn in and questioning by the trial judge began. Of the five witnesses called, only four were questioned about the alleged improper jury visits to the accident scene. The fifth witness, Joseph L. Kuntz, the father of one of the jurors, was questioned about his association with the defendant's insurance carrier.

Jurors Keith A. Kuntz and Zada Wiedenhamer testified that they did not visit the scene of the occurrence or Black's T.V., nor did they gain any knowledge during the course of the trial that any member of the jury had visited the scene or Black's T.V.

Robert Folkland was next to testify. The pertinent portion of his testimony is as follows:

"Q. Now, did you serve on the jury in the case of Brown versus Johnson and G & M Distributors?

A. Yes, I did.

Q. During the course of the trial did you visit the scene of the occurrence or Black's TV?

A. No, I didn't.

Q. During the course of the trial did you gain knowledge that any member of the jury visited Black's TV or the scene of the occurrence?

A. I might have heard someone say they might have been there.

Q. Do you recall hearing—

A. I don't know whether it was before or after.

Q. Before or after what?

A. The trial of the case.

Q. Do you know the name of the individual juror you believe you have heard that from?

A. No. We were all talking and looking at the pictures and we were talking to each other.

Q. Was it one juror or more than one juror who you heard that had visited the scene?

A. I couldn't say.

Q. Did you make a statement to an investigator concerning this matter?

A. Yes.

Q. You made two statements, didn't you, one on—in other words, one on one day and one on another day?

A. Not that I can recall.

Q. You just made one, do you think?

A. I think so. It has been two years ago, hasn't it?

Q. That has been approximately two years ago.

A. Yes, I can't say for sure.

Q. Do you recall or do you have any knowledge when this juror or jurors went to Black's TV?

A. No, I don't. I just was looking at the pictures and I thought I heard somebody say they were there. Nothing for sure."

At this point a discussion was had among the two attorneys and the trial judge regarding the possibility of questioning Folkland about his earlier statements which had been introduced into evidence. The judge indicated he would accept the statements as true, but he refused to question Folkland about them. Folkland was then excused.

Juror Velma Loyd testified that one of the jurors said: "Well, we know how it is up there because we have seen where it was." She added that she did not see how "they [the jurors] could see it unless they would go there or something like that." Ms. Loyd was unable to identify the juror or jurors who had indicated, during deliberations, that they had visited the scene. No further evidence was taken at the hearing.

On December 11, 1979, the trial court's order was entered. The court found "[t]here is no evidence that any member of the jury made an independent inspection of matters not in evidence and referred to in their findings during deliberation and no extraneous prejudicial information was brought to the jury's attention." It is from this order that the plaintiff now appeals.

■■ We believe the trial court was in error when it found there was no evidence that at least one of the jurors had made an independent investigation of the accident scene. In his post-trial statements to attorney Edler, Folkland stated unequivocally that at least one juror had made an

unauthorized visit to Black's T.V. for the purpose of testing witness Strader's credibility. The trial court took these statements as true, and none of the evidence adduced at the hearing pursuant to our mandate refuted Folkland's post-trial assertions. As a consequence, there was indeed evidence that unauthorized extraneous information had been brought to the attention of at least some members of the jury.

This error alone, however, does not necessitate a reversal. It is only when the extraneous or unauthorized information that reaches the jury is prejudicial to the losing party that a reversal is required. (*Holmes.*) Therefore, the next question is whether the viewing of the accident scene by at least some of the jury was so prejudicial as to warrant a reversal and remandment for a new trial.

In a case similar to the case at bar, the Second District Appellate Court held that an unauthorized visit by a juror to the accident scene in question and the production of a copy of Rules of the Road in the jury room were prejudicial and warranted a new trial, without any examination into the effect, if any, that such unauthorized extraneous information may have had upon the verdict. (*Heaver v. Ward* (1979), 68 Ill. App. 3d 236, 386 N.E.2d 134.) "Neither the trial court nor this court need attempt to delve into the exact effect of unauthorized evidence on a particular juror. * * * It is enough that the unauthorized evidence directly relates to issues in the case and may have improperly influenced the verdict." (*Heaver*, 68 Ill. App. 3d 236, 241, 386 N.E.2d 134, 139.) Courts from other jurisdictions have similarly found unauthorized juror visits to the locus in quo to be presumptively prejudicial. *E.g., Simmons v. State* (Me. 1966), 222 A.2d 366; *Bellows Falls Village Corp. v. State Highway Board* (1963), 123 Vt. 408, 190 A.2d 695; see *Capozzi v. Butterwei* (1949), 2 N.J.S. 593, 65 A.2d 144; *De Porte v. State Furniture Co.* (1935), 129 Neb. 282, 261 N.W. 419; Annot., 11 A.L.R.3d 918, §5 (1967).

■■■ In the instant case, the statements first made by juror Folkland that one or more unnamed jurors had visited the accident site and viewed the scene from the vantage point of a key witness whose testimony bore directly on the plaintiff's allegations of lack of contributory negligence were of critical importance to the outcome of the trial. The physical circumstances at the scene were vital to the jury's understanding of the events which transpired, and the evidence presented by the parties at trial was in direct conflict on this issue. The plaintiff and the defendants described the scene quite differently, with the plaintiff verifying that the physical character of the intersection had undergone material and substantial change between the date of the occurrence and the date of the trial. We find that under these circumstances, any unsupervised visit by any member of the jury to the accident scene is presumptively prejudicial. Such a visit certainly related to a key issue in the case, and may have

improperly influenced the verdict the jury rendered in favor of the defendants. (*Heaver.*) No evidence was introduced to the contrary. As a consequence, we believe that the lower court committed reversible error in finding that no extraneous prejudicial information had been brought to the jury's attention. In light of the fact that the unauthorized visit by a juror to Black's T.V. may have influenced the verdict and prejudiced the plaintiff, and further hearings would serve no useful purpose, the plaintiff is entitled to a new trial.

For the foregoing reasons, we reverse the order of the Circuit Court of Knox County, and remand this cause for a new trial.

Reversed and remanded.

ALLOY, P. J., and STOUDER, J., concur.