THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JUDI L. MARCOTTE, Defendant-Appellant.

Third District   No. 3—02—0238

Opinion filed April 22, 2003.

Dan J. Hofmeister, Jr., David M. Lavin, and Kevin D. Tessier, all of Neal, Gerber & Eisenberg, and Kurt T. Temple, of Quarles & Brady, L.L.C., both of Chicago, for appellant.

Edward D. Smith, State's Attorney, of Kankakee (John X. Breslin and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Following a bench trial, the defendant, Judi L. Marcotte, was found guilty of disorderly conduct by knowingly transmitting a false report of the sexual abuse of a child to the Department of Children and Family Services (DCFS) (720 ILCS 5/26—1(a)(7) (West 1998)). On appeal, the defendant argues that the State failed to prove the elements of the crime beyond a reasonable doubt. We affirm.

## I. BACKGROUND

The record of the trial in this case consists of a certified bystander's report.

At trial, Detective Gregory Kunce of the Bourbonnais police department testified for the State. He stated that he investigated an anonymous telephone call placed to the DCFS "hotline" on September 3, 1999, alleging that a five-year-old child had been sexually abused at the Fortin Villa Daycare Center (Fortin Villa) in Bourbonnais. Kunce said that he assisted in interviewing the child and determined that the child had not been abused.

The officer testified that the child's mother, Rachel Gagnon, told him about a conversation that Gagnon had with Gina Blanchette in August 1999. In that conversation, Blanchette said that the defendant had told her during a phone conversation that DCFS was investigating Fortin Villa. At trial, the defendant objected that the officer's testimony was hearsay. The court overruled the defendant's objection and admitted the testimony for the purpose of establishing Kunce's investigation.

Kunce said that he went to the defendant's home to interview the defendant concerning Gagnon's statement. During this interview, the defendant denied contacting DCFS. Kunce stated that during the interview, the defendant's answers were short and vague. While at her home, Kunce noted that the defendant provided daycare. He observed other parents coming and going from the residence.

Kunce testified that the defendant phoned him at the police station "a day or so after" he interviewed her at her home. In response to one of Kunce's questions, the defendant said that if a telephone call was made to DCFS from her home, it was not made by her. She suggested that such a call may have been made by Blanchette because Blanchette had access to the defendant's home and telephone. Blanchette testified that at one time the defendant provided childcare for Blanchette's child.

Kunce initiated a second telephone conversation with the defendant during her daycare business hours. He told the defendant that he had a copy of her telephone records which showed that the call

to DCFS originated from her telephone number. On cross-examination, Kunce said that, contrary to what he told the defendant, her phone records did not show a call from her home to DCFS. He submitted that "1-800" numbers could not be traced. Kunce stated that he did not obtain a copy of the DCFS "hotline" tape of the phone call "or any other verbal evidence or telephone documentation pertaining to the alleged complaint to DCFS."

Kunce submitted that this second phone conversation with the defendant lasted approximately 45 minutes. He said that in response to his last question to her she said, "yes[,] I did it." According to Kunce, he then told the defendant that he was going to arrest her. On cross-examination, Kunce stated that he did not remember the exact words that the defendant used in her "claimed 'admission,' " but she used words similar to those he used in his previous testimony.

Blanchette testified for the State. She said that during a phone conversation she initiated with the defendant in August 1999, the defendant told Blanchette that the defendant heard a rumor that DCFS was investigating Fortin Villa. Blanchette said that she later called Gagnon and Diana Parker, the director of Fortin Villa, and told them of the rumor. During cross-examination, Blanchette stated that she did not know who called DCFS. She submitted that she did not call DCFS.

Parker testified that Kunce investigated the child abuse claim. She, however, did not recall a phone call regarding the rumor that DCFS was investigating Fortin Villa.

The defendant took the witness stand in her own defense. She testified that she was a licensed daycare provider since 1998. The defendant contended that she never made any contact with DCFS regarding an alleged sexual abuse incident at Fortin Villa. She submitted that she did not admit to Kunce that she made such a phone call to DCFS.

The defendant stated that the second phone conversation with Kunce took place while she was providing childcare, when she was tired, and when a speech therapist was at her home working with her child. When she told Kunce that her phone conversation with him was going on too long, Kunce told her that it would be against the law for her to hang up on him. The defendant testified that out of her exasperation over the length of the call and because of Kunce's persistence, she sarcastically told Kunce, "Yes[,] I made a phone call, yeah whatever" in order to end the call. She submitted that the phone conversation with Kunce lasted approximately 1¹⁄₂ hours.

The defendant testified that her August 1999 phone conversation with Blanchette involved "vague gossip" the defendant had heard

concerning Fortin Villa. She stated that she later called Parker at Fortin Villa and told Parker that she did not make the alleged call to DCFS.

At the conclusion of the trial, the court found the defendant guilty. The bystander's report states, "The Court believed that [the defendant] was not credible."

The court sentenced the defendant to 12 months of conditional discharge, a $300 fine, and 60 hours of public service. The defendant filed a motion to reconsider the court's finding and sentence. In her motion, the defendant argued that the State failed to prove the elements of the offense. Her motion was denied and she appealed.

## II. ANALYSIS

### Reasonable Doubt

The defendant argues that the State did not prove the elements of disorderly conduct beyond a reasonable doubt.

■ A person commits disorderly conduct when she knowingly transmits a false report of child abuse to DCFS. 720 ILCS 5/26—1(a)(7) (West 1998).

■ When reviewing the sufficiency of the evidence, we will reverse a defendant's conviction only if, viewing the evidence in the light most favorable to the prosecution, no rational finder of fact could have found the crime to have been proved beyond a reasonable doubt. *People v. Villarreal*, 198 Ill. 2d 209, 761 N.E.2d 1175 (2001).

#### 1. *Admission*

The defendant submits that the State's only evidence of her guilt was her statement that she made the call to DCFS, which she claims was not an admission, but instead was a sarcastic remark.

■ When presented with conflicting versions of events, the trier of fact is entitled to choose between those versions. The fact finder need not accept the defendant's version of events. It is not the role of an appellate court to second-guess the verdict or to retry the defendant. *Villarreal*, 198 Ill. 2d 209, 761 N.E.2d 1175.

■ In this case, the judge, as trier of fact in a bench trial, was not required to accept the defendant's version of events. The bystander's report specifically stated that the judge did not find the defendant's testimony to be credible. The judge was entitled to choose Kunce's version of events over the defendant's version. A rational trier of fact could have inferred that the defendant admitted to Kunce that she made the call to DCFS.

#### 2. *Corpus Delicti*

The defendant submits that assuming, *arguendo*, she admitted to

Kunce that she made the phone call, the *corpus delicti* of the crime cannot be proved on the basis of her admission alone. The defendant contends that the State failed to produce independent evidence of the phone call.

■ The *corpus delicti* of a crime has two components: (1) proof of the occurrence of the harm, and (2) that the harm was caused by criminal conduct. Proof of the *corpus delicti* may not depend exclusively on a defendant's extrajudicial confession, admission, or other statement. The defendant's statement must be corroborated with independent evidence which tends to show that the offense occurred. *People v. Wright*, 286 Ill. App. 3d 456, 677 N.E.2d 494 (1997). To establish the *corpus delicti*, the independent evidence need not prove beyond a reasonable doubt that the crime was committed. *People v. Furby*, 138 Ill. 2d 434, 563 N.E.2d 421 (1990).

■ Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. *People v. Doyle*, 328 Ill. App. 3d 1, 765 N.E.2d 85 (2002). Failure to object to hearsay during the trial allows such evidence to be considered by the trier of fact and to be given its natural probative effect. *People v. Williams*, 139 Ill. 2d 1, 563 N.E.2d 431 (1990). The probative effect of such hearsay may range from being given full weight (see *Town of Cicero v. Industrial Comm'n*, 404 Ill. 487, 89 N.E.2d 354 (1949) (cause of death established by hearsay testimony of coroner's physician)), to no weight (see *First National Bank & Trust Co. of Rockford v. Illinois National Bank & Trust Co. of Rockford*, 19 Ill. 2d 385, 167 N.E.2d 223 (1960) (self-serving hearsay statement rejected as proof that transaction was loan)).

■ Here, Kunce testified that he was investigating a phone call to DCFS that a child had been sexually abused at Fortin Villa. According to the bystander's report, the defendant did not object to the admission of Kunce's statement in evidence.

Kunce's statement consisted of two assertions: (1) that DCFS received the phone call, and (2) that he was investigating that phone call. Kunce's assertion that DCFS received the phone call was a statement by DCFS, made out of court, offered to prove the truth of the matter asserted. Therefore, the statement was hearsay.

The defendant, however, did not object to Kunce's statement as hearsay, or on any other grounds, either in court or in her posttrial motion. Because the defendant did not object to its admission, Kunce's assertion that DCFS received the call could be considered by the judge and given its natural probative effect. There is nothing in the record to indicate that the statement of a police officer that he was investigating a phone call received by a state agency should be given less than its full probative weight.

The defendant is incorrect that the State failed to produce evidence independent of her admission that she made the phone call. A trier of fact reasonably could have concluded that the defendant's admission was corroborated by Kunce's assertion that DCFS had received such a call.

### 3. *Knowledge*

On rehearing, the defendant argues that the State did not prove she knew the report was false at the time of its transmission. She contends that the evidence only showed she admitted making a report that was found to be unsubstantiated following Kunce's investigation.

■ The knowledge element of a crime rarely can be proved by direct evidence. *People v. Sanchez*, 292 Ill. App. 3d 763, 686 N.E.2d 367 (1997). The knowledge element ordinarily is inferred from circumstantial evidence. *People v. Price*, 225 Ill. App. 3d 1032, 589 N.E.2d 192 (1992); *People v. Holt*, 271 Ill. App. 3d 1016, 649 N.E.2d 571 (1995). Determining whether a defendant acted with the requisite state of mind is for the trier of fact. When facts in a case give rise to more than one inference, a reviewing court shall not substitute its judgment for the judgment of the trier of fact, unless that judgment was inherently implausible or unreasonable. *Price*, 225 Ill. App. 3d 1032, 589 N.E.2d 192.

■ In the present case, the defendant initially denied to Kunce that she called DCFS. Later, she admitted to Kunce that she made the call, but she did not protest that the call was made in good faith, *i.e.*, that she believed the statement to be true. On the witness stand, when given an opportunity to assert a claim that she believed the statement to be true, the defendant instead claimed that her statement to Kunce was not an admission, but was a sarcastic remark. From this circumstantial evidence, a rational trier of fact could have inferred that the defendant knew the report was false at the time of its transmission. Since the judge found the defendant had in fact made the call, it was not unreasonable for the judge to infer from the defendant's failure to claim that the call was made in good faith that the defendant knew the report was false at the time of the transgression. We will not substitute our judgment for the judgment of the trier of fact because it is not inherently implausible or unreasonable to infer that the defendant knew that her report was false.

### III. CONCLUSION

Taking the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the State proved the elements of disorderly conduct beyond a reasonable

doubt. Therefore, we affirm the judgment of the Kankakee County circuit court.

Affirmed.

SLATER and LYTTON, JJ., concur.